608 P.2d 166
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Paul A. CAPUTO, Defendant-Appellant.**

**No. 4161.**

Court of Appeals of New Mexico.

Feb. 19, 1980.

John B. Bigelow, Chief Public Defender, Santa Fe, Martha A. Daly, Appellate Defender, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Michael E. Sanchez, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WALTERS, Judge.

Defendant was indicted by a Bernalillo County Grand Jury on two counts of issuing worthless checks in violation of § 30–36–4, N.M.S.A.1978. The jury acquitted him on the first count and returned a conviction on the second. Defendant appeals on the ground that questioning of him by the trial court on an extraneous matter was prejudicial error.

Defendant owned a clothing store which normally sold "seconds." On March 25th and 27th, 1978, he acquired merchandise for resale from an Albuquerque business, paying for the goods by checks in the amount of $182.39 and $245.03, respectively, drawn on his business account. The checks were not paid by his bank because of insufficient funds in the account.

Section 30–36–4, under which defendant was charged, reads:

It is unlawful for a person to issue in exchange for anything of value, *with intent to defraud*, any check, draft or order for payment of money upon any bank or other depository, *knowing at the time of the issuing that the offender has insufficient funds* in or credit with the bank or depository for the payment of such check, draft or order in full upon its presentation. (Emphasis added.)

Defendant was notified that his checks had not cleared; he attempted to work out payments with the merchant and was unable to do so. Both checks were paid in full approximately a year later, but not until after he had been indicted on these charges. Defendant testified that he had no intent to defraud and because of his poor management and bookkeeping abilities, he was unaware at the time the checks were written that he had insufficient funds in the bank to cover them. Just after defendant had concluded his testimony on redirect examination and immediately before the defense rested, the trial judge announced she had some questions, and the following examination occurred:

> THE COURT: Mr. Caputo, did you ever consider going bankrupt?
>
> DEFENDANT: I had had bankruptcy five years before that when my son was born.
>
> THE COURT: But you knew you could take bankruptcy in this case?
>
> DEFENDANT: I was told I could *not* take bankruptcy in this case. It has to be every seven years and * * * I, I don't want to go bankrupt.

At the first opportunity out of the presence of the jury (see N.M.R.Evid. 614(c), 1978), the defense objected to the court's questioning as prejudicially immaterial and irrelevant, and moved for a mistrial. The motion was denied, the judge explaining that her question was merely an attempt to inform the jury that a civil remedy was available to one in defendant's financial situation. The court and both attorneys determined that an admonition to the jury would be inappropriate because it might call undue attention to the court's interrogation.

■ There is no merit to the State's argument that objection to the court's question was untimely. The objection was made at the instructions conference held after the noon recess. Recess had been called immediately after the court concluded its questioning of defendant. The requirement of Evidence Rule 614(c) dealing with objections to questions by the judge was satisfied.

■ Rule 614(b) permits a judge to interrogate a witness "provided, however, that in trials before a jury, the judge's questioning must be cautiously guarded so as not to constitute an implied comment." The trial court's inquiry into defendant's consideration of bankruptcy might well have detracted from the presumption of innocence to which defendant was entitled, because his answers may have tainted the ·opinion of the jury in deciding whether or not defendant's disavowals of intent to deceive or knowledge of insufficient funds should be believed in view of his past history as a debtor. The jury reasonably could have interpreted the questioning as impliedly asking: "Why did you not take bankruptcy instead of issuing worthless checks?" Moreover, it is not an uncommon experience for one who has taken bankruptcy frequently to suffer disrepute and denegration in the eyes of some members of the public. We have no way of knowing whether the irrelevance of a prior bankruptcy may have exposed defendant to such discredit or whether that evidence had an influence on the jury's verdict.

It was said in *State v. Sedillo*, 76 N.M. 273, 275, 414 P.2d 500, 501 (1966):

> A trial judge must at all times be judicious. He must not, by undue participation in the examination of witnesses, or by other conduct, convey to the jury that he favors one side or the other, and must not convey to the jury what he thinks the verdict should be. Because of his power and influence, and because of the tendency of the jury to place great emphasis upon what he says and does, *the trial*

*judge must be most careful not to say or do anything which would add to a party's burdens of proof, or detract from the presumptions to which a person charged with crime is entitled.* (Our emphasis.)

The trial court did give Instruction 1.00 of the N.M.U.J.I. (Crim.), 1978, at the beginning of the trial, which states, in part:

No statement, ruling, remark or comment which I make during the course of the trial is intended to indicate my opinion as to how you should decide the case or to influence you in any way. At times I may ask questions of witnesses. If I do, such questions do not in any way indicate my opinion about the facts or indicate the weight I feel you should give to the testimony of the witness.

But that instruction in no way advised the jury how to recognize irrelevant questions or told the jury that both such questions and the answers to them should be disregarded because they were irrelevant.

■ We revitalize the comments made in numerous cases,[1] if they need revitalization, that a cross-examination, even if unobjectionable when conducted by the prosecutor, might prejudice the defendant when conducted by the judge. While we recognize the right of a judge to impartially examine a witness, we can readily see that a suggestion of the judge's opinion might easily be impressed upon the minds of the jury; and that is particularly unfair in a criminal trial. If the jury inadvertently indulges a belief the judge has disregarded the presumption of defendant's innocence, they too may disregard it. During the course of a trial a judge should not make any unnecessary comments or take any unnecessary action which *might* prejudice the rights of either of the parties. Maintaining an aura of judicial impartiality is especially critical in a case like the present where the credibility of the defendant was a particularly important issue in establishing the validity of his defenses.

■ We know that an alert and capable judge at times feels the court can assist in developing the evidence by participating in the interrogation of witnesses. A judge should ordinarily refrain, however, from intruding upon the functions of counsel, thus shielding the court's position of impartiality from any contrary suggestion to the jury. *United States v. Carmel*, 267 F.2d 345 (7th Cir. 1959). Although the intervention of the court in this case was brief and its questions perhaps puzzling to some of the jurors, nevertheless the information elicited was the last evidence of the trial heard by the jury and its significance in all probability was pondered during the jury's deliberations. We feel, as the court did in *Gomila v. United States*, 146 F.2d 372 (5th Cir. 1944), that because of the judge's position and the respect and confidence reposed in him (or her) and in his learning and assumed impartiality, a jury is likely to attach undue weight to any participation by the judge in the conduct of the trial.

■ We may hold as harmless error only those improper trial proceedings which we are convinced have had no bearing on the outcome of the trial because the evidence of defendant's guilt, without such evidence, was overwhelming. *State v. Gutierrez*, 93 N.M. 232, 599 P.2d 385 (Ct.App.1979). Defendant's acquittal on one count immediately destroys the possibility of such sure conviction of guilt in this case.

Other issues raised in the docketing statement but not briefed are deemed abandoned. *State v. Ortiz*, 90 N.M. 319, 563 P.2d 113 (Ct.App.1977).

The judgment is reversed and the matter remanded for a new trial.

LOPEZ, J., concurs.

HENDLEY, Judge (dissenting).

I dissent.

I disagree with the majority opinion. The objection was untimely. It was not at the "next available opportunity". N.M.R. Evid. 614(c), N.M.S.A.1978. There was no

---

1. E.g., *Adler v. United States*, 182 F. 464 (5th Cir.1910); *State v. Parks*, 25 N.M. 395, 183 P.  433 (1919); *United States v. Wyatt*, 143 U.S. App.D.C. 136, 442 F.2d 858 (D.C.Cir.1971).

attempt after the jury was excused—no attempt during the settling of the instructions (approximately 100 counters on the tape recorder)—only after the instructions were settled. I would affirm on the basis of an untimely objection.